**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United States of America,　　　　　　　　　　Crim. No. 13-41 (JNE/JJK)

　　　　　Plaintiff,

v.

Buck Otto White,　　　　　　　　　　**REPORT AND RECOMMENDATION**
also known as Timothy Joseph
Hoffman,

　　　　　Defendant.

Richard Newberry, Esq., Assistant United States Attorney, counsel for Plaintiff.

Manvir K. Atwal, Esq., Assistant Federal Defender, counsel for Defendant.

　　　　This matter is before the Court on Defendant's Amended Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 28). Defendant moves to suppress the physical evidence obtained during eight searches on the grounds that the corresponding search warrants were issued without a sufficient showing of probable cause in the supporting affidavits. (Doc. No. 30, Mem. in Supp. of Mot. to Suppress Evidence Obtained as a Result of Search and Seizure ("Def.'s Mem.") 2–4.) This Court held a hearing on the motion on April 30, 2013,[1] and received in evidence the eight search warrants

---

[1]　　On April 30, 2013, the Court issued an Order concerning various other motions and took Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 23, later amended at Doc. No. 28), under
(Footnote Continued on Next Page)

and supporting documents. (*See* Doc. Nos. 26, 29.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND FACTS

**The Search Warrants**

The affidavits submitted in support of the search warrants show that Defendant Buck Otto White was a suspect in several investigations for theft, including at plumbing and auto shops, a home, and a storage unit – all in southern Minnesota during the period from November 2012 through January 2013.

On November 15, 2012, Brown County District Court Judge Robert Docherty issued a warrant to search XXX S. Minnesota St., New Ulm, Minnesota (further identified in the supporting affidavit as the residence of Buck Otto White), and surrounding curtilage and outbuildings on the premises, a vehicle described as a 1995 GMC K15 with MN license plate 011 ACT, and a white, enclosed utility trailer located on the premises. (Hr'g Ex. No. 8.) The search warrant identified the objects of the search as a specific Dual Hydro Brush Hog Mower, specified batteries and bottles of motor oil, a specific front grill, specific parking lights, a

---

(Footnote Continued from Previous Page)
advisement on May 9, 2013, for submission to the District Court on Report and Recommendation. (Doc. No. 27.)

specific glove box, and various tools, including a Sawzall, a Milwaukee Band Saw, three concrete drills, a welding kit, "Cresent" set of tools, and all items either engraved with "DG Welding 651-688-2358" or with "DG Welding 651-688-2358" written on them in permanent marker. (*Id.*) Judge Docherty issued the search warrant on the basis of probable cause demonstrated in the search warrant application and supporting affidavit of Robert Malz, the City of Jordan, Minnesota Chief of Police. (*Id.*) The Government searched the premises and the vehicles on November 15, 2012. (*Id.*) During the course of the search, the Government seized the following evidence: a New Hope Police Department badge #70; a Lockage pad lock; a Bosch Hammer SDS plus case with bits; a Bosch blue plastic case with Bosch hammer drill; a New Line Roofing magnetic sign; and the vehicle with license plate 011 ACT containing miscellaneous tools. (*Id.*)

On February 4, 2013, Judge Docherty issued a second warrant for a 2002 Chevy VTR minivan with the license plate 432 AUY, allowing for the installation of a Mobile Tracking Device and for the monitoring of the tracking device to obtain location or Global Positioning System ("GPS") information for a sixty-day period. (Hr'g Ex. No. 1.) Judge Docherty issued this search warrant on the basis of probable cause demonstrated in the sear warrant application and supporting affidavit of New Ulm Police Officer Jeffrey Hohensee. (*Id.*) The Government installed the tracking device on February 7, 2013, and removed it on February 15, 2013. (*Id.*)

3

On February 7, 2013, Judge Docherty issued a third warrant, which was another warrant to search the main floor and the basement at Defendant's residence, XXX S. Minnesota St., New Ulm, Minnesota. (Hr'g Ex. No. 2.) The search warrant identified the objects of the search as controlled substances and contraband, including but not limited to methamphetamine, cocaine, heroin, and other controlled substances in a white powder form; hypodermic needles and drug paraphernalia used in the inhalation, ingestion, and injection of controlled substances; and a Sony handycam video recording camera. Judge Docherty issued the search warrant was issued on the basis of probable cause demonstrated in the search warrant application and supporting affidavit of New Ulm Police Sergeant Jeremy Reed. (*Id.*) The Government searched the premises on February 7, 2013. (*Id.*) During the search, the Government seized various drug paraphernalia, two Sony Handymann video cameras, and a "Cherry designed" handbag with multiple veterinary pill bottles. (*Id.*)

The fourth warrant was issued on February 14, 2013, by Nicollet County District Court Judge Allison Krehbiel, to search Storage Unit #3 at B&G Storage in Courtland, Minnesota. (Hr'g Ex. No. 6.) The search warrant identified the objects of the search as follows:

> Burglary tools, stolen property including hand and power tools, 12 volt Carquest automotive car battery black in color with side posts only, transaction receipts, proof of ownership, photographs of interior and exterior of vehicle, drug paraphernalia, Milwaukee miter chop saw, Dewalt regarding radio, skill saw inbox (Dewalt) name labeled on both boxes silver sticker with blue lettering, "Jeff Stessard Repair

4

> Inc["], strike mater laser made 9 inch power auger no blades, four
> tire on rims, size P185 70 14[, and] Padlocks new and used.

(*Id.*) Judge Krehbiel issued the search warrant on the basis of probable cause demonstrated in the search warrant application and supporting affidavit of Investigator Marc Chadderdon from the Nicollet County Sheriff's Office. (*Id.*) The Government searched the storage unit in the morning of February 14, 2013. (*Id.*) During the search, the Government seized various tools and lawn equipment, a black tote of watches, a First Premier bank card and a Walmart card listed to another person, a Remington SP-10 Magnum 10 gauge shotgun LE89-4332, a Pioneer Model 27A .22 caliber rifle, a New Haven (Mossberg) 12 gauge shotgun – Serial H809678, a SKS rifle – Serial 18007638, three soft sided gun cases, a black hard side gun case, a black soft side case of ten gauge shotgun shells, a Texsport camo ammunition bag, a Caldwell shooting rest (green), and a GM Delco stereo, among other things. (*Id.*)

Also on February 14, 2013, Judge Krehbiel issued another search warrant, this one to search a maroon 2002 Chevy Venture ES minivan with Minnesota license plate 432 AUY. (Hr'g Ex. No. 5.) The search warrant identified the objects of the search as follows:

> Burglary tools, stolen property including hand and power tools, 12
> volt Carquest automotive car battery black in color with side posts
> only, transaction receipts, proof of ownership, photographs of interior
> and exterior of vehicle, drug paraphernalia, Milwaukee miter chop
> saw, Dewalt regarding radio, skill saw inbox (Dewalt) name labeled
> on both boxes silver sticker with blue lettering, "Jeff Stessard Repair
> Inc["], strike mater laser made 9 inch power auger no blades, four
> tire on rims, size P185 70 14[, and] Padlocks new and used.

(*Id.*)  Judge Krehbiel issued the search warrant on the basis of probable cause demonstrated in the search warrant application and supporting affidavit of Investigator Chadderdon.  (*Id.*)  The Government searched the Chevy Venture in the afternoon on February 14, 2013.  (*Id.*)  During that search, the Government seized four DeWalt cordless drills, an Irwin tool bag with miscellaneous tools, an Instant Power Jump Pack, a Rooster back of tools with nun chucks and knives, and an ACDelco 12-ton Bottle Jack.  (*Id.*)

On February 19, 2013, Rice County District Judge John Cajacob issued a warrant to search a tan 1999 Buick Sedan with Minnesota license plate 132 KDX.  (Hr'g Ex. No. 4.)  The search warrant identified the objects of the search as "Burglary tools, stolen property including and or power tools, 12 volt Carquest automotive car battery, black in color, with side posts, transaction receipts, proof of ownership, [and] photographs of the exterior and interior [of] the vehicle."  (*Id.*)  Judge Cajacob issued the search warrant on the basis of probable cause demonstrated in the search warrant application and supporting affidavit of Investigator Chadderdon.  (*Id.*)  The Government searched the vehicle on February 19, 2013, and seized various tools, an AVS security camera, a bolt cutter, an air compressor, and a Canon camcorder.  (*Id.*)

On February 20, 2013, Nicollet County District Court Judge Todd Westphal issued a warrant to search Buck Otto White, including his personal property being stored at the Nicollet County Jail, for a T-Mobile cellular phone and an

Apple iPhone. (Hr'g Ex. No. 7.) The Government searched Defendant and his property on February 20, 2013, and seized a T-Mobile cellular phone and an Apple iPhone. (*Id.*)

Judge Docherty issued the eighth search warrant on March 5, 2013, authorizing the search of the main floor and the basement of Defendant's residence at XXX S. Minnesota St., New Ulm, Minnesota, and the and surrounding curtilage and outbuildings on the premises. (Hr'g Ex. No. 3.) The search warrant identified the objects of the search as a Sharp 37-inch flat screen television, shotgun shells in .10 guage with the letters "BBB" in silver marker, rifle cartridges (7.62 X 30 for SKS Rifle), and any mail or documents with the names of Kenneth Nevins or Brenda Nevins with a specific address in Lake Crystal, Minnesota. Judge Docherty issued the search warrant on the basis of probable cause demonstrated in the search warrant application and supporting affidavit of Officer Hohensee. (*Id.*) The Government searched Defendant's residence on March 6, 2013. (*Id.*) During the search, the Government seized the following: tackle boxes with gun supplies, an ammunition box with two birth certificates and miscellaneous tools and electronics, .10 gauge shells, Remmington Fireball ammunition, a Canon camera and camera bag, a framed hockey jersey, two Dell laptop computers, an "industrial snake," a gas can, a check numbered 4557, and drill bits. (*Id.*)

After the Government executed the first seven of the search warrants discussed above, on March 4, 2013, Defendant was indicted for being an "Armed

7

Career Criminal in Possession of a Firearm" in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 924(e). (Doc. No. 1, Indictment.)

## DISCUSSION

**I. Standard of Review**

Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 238). When determining whether probable cause exists, a court does not evaluate each piece of information independently, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002). "[P]robable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (quoting *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985)).

However, "probable cause must exist at the time of the search and not merely at sometime earlier." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005). A lapse between the observations of a witness and the issuance

8

of a search warrant may make probable cause "fatally stale." *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995). But "[t]here is no bright-line test for determining when information is stale," and the passage of time, alone, is "not always the controlling factor," as other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," are also relevant to the inquiry. *Id.* "[W]here recent information corroborates otherwise stale information, probable cause may be found." *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995) (quoting *United States v. Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990)). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004) ("In issuing a warrant, the judge makes a practical, common-sense decision whether, considering all the circumstances, a reasonable person would have reason to suspect evidence would be discovered." (quotations omitted)).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court "'had a substantial basis for . . . conclud[ing] that probable cause existed.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238–39). Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the

9

issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

## II. Analysis

Defendant argues that the affidavit supporting the February 4, 2013 search warrant for the installation of a Mobile Tracking Device on a 2002 Chevy minivan and for GPS monitoring of the tracking device is deficient because the information contained in the affidavit is stale. With regard to the other seven search warrants at issue, Defendant argues generally that they lack probable cause and requests that the Court review the search warrants for probable cause.[2] The Court notes that Defendant has done nothing to sustain his burden

---

[2] As to the February 7, 2013 search warrant for Defendant's residence, which was based on a previous visit to the residence during a medical emergency, Defendant appears to question whether the items viewed by the officers (i.e., hypodermic needles, a white powder residue, and packaging known for illegal narcotics) were truly in plain view or whether the officers were improperly searching for other items in places that were not necessary for the officers to be to respond to the medical emergency. Defendant, however, cites no support for his assertion that the police did anything improper. Nor does he provide any support for the proposition that it was improper for the judge to consider what the officers saw in the context of determining whether there was probable cause for the search warrant.

As to the March 5, 2013 search warrant for Defendant's residence, Defendant states, "Much of the warrant discusses the warrant that was executed on at storage locker on February 14, 2013 (Exhibit 6), and two weeks later, officer felt the need to execute yet another warrant." (Doc. No. 30, Def.'s Mem. 3.) Defendant makes no argument and cites no support for why the issuance of the March 5, 2013 warrant was improper after the search had been executed on the storage locker.

10

of proving that the evidence seized in these seven searches should be suppressed. His request amounts to no more than Defendant asking the Court to double-check to make sure that the state-court judges got it right when they signed the search warrants. Nevertheless, this Court has carefully reviewed all of the warrant applications at issue and determined that each application showed probable cause to search and the warrants were properly issued.[3]

### A. February 4, 2013 Search Warrant for Placing a GPS Device

The evidence seized as a result of the February 4, 2013 warrant that allowed the officer to place a GPS tracking device on the 2002 Chevy VTR minivan with license plate 432 AUY was not unlawfully obtained in violation of Defendant's constitutional rights. The search warrant was based on sufficient probable cause as stated in the Affidavit of Officer Jeffrey Hohensee and as determined by Brown County District Court Judge Robert Docherty. The warrant properly and sufficiently identified the vehicle on which the device was to be installed, when the installation was to occur, the period of time for which the

---

[3] The Court notes that Defendant did not make a *Franks* challenge to any of the warrants, submit an affidavit challenging their sufficiency, or otherwise provide pre-hearing notice to the Government or the Court that he might be seeking to advance claims that would be subject to a *Franks* analysis. *See Franks v. Delaware*, 438 U.S. 154 (1978). A *Franks* challenge requires that a defendant make a substantial preliminary showing that the affidavit contents or omissions were either made with intent to make the affidavit misleading or with reckless disregard as to whether the affidavit became misleading as a result. *Id.* at 171–72.

11

device could remain on the vehicle, and it provided specific permission to monitor location or GPS information.

Defendant specifically argues that the information contained in Officer Hohensee's affidavit is stale. This Court disagrees. "[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993). Further, "[t]he passage of time between the transactions on which a warrant is based and the ensuing search is less significant when the facts recited indicate activity of a continuous nature." *United States v. Jones*, 801 F.2d 304, 314 (8th Cir. 1986). For example, "[i]n investigations of ongoing narcotics operations, 'intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'" *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001) (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)). Here, in the relevant supporting affidavit, Officer Hohensee references a theft that occurred on November 5, 2012, in Jordan, Minnesota, in which Defendant was a suspect, was charged, and posted bail on December 8, 2012. (Hr'g Ex. No. 1.) He also states that after Defendant's release, Defendant has been seen driving the Chevy minivan with license plates 432 AUY, which is listed to his wife's parents. (*Id.*) The affiant attests that there was another theft on January 21, 2013, in New Ulm, Minnesota, and a camera captured a minivan at the time of the theft, which appeared to be similar to that typically parked in

12

front of Defendant's residence. (*Id.*) And another theft occurred on January 28, 2013, in Mankato, Minnesota, and a camera captured the suspect's vehicle, which was the Chevy minivan with license plates 432 AUY.[4] (*Id.*) Also, the police found a cellular phone left behind in one of the damaged vehicles that was later determined to belong to Defendant. (*Id.*) In addition, Officer Hohensee states that he believes Defendant was using the minivan with license plates 432 AUY to assist him during thefts. (*Id.*) This Court concludes that the affidavit sufficiently alleges that Defendant engaged in an ongoing series of thefts while using the minivan with license plates 432 AUY so that the state-court judge could find probable cause to issue the warrant. Moreover, the probable cause that supported the issuance of the warrant on either January 21, 2013, or January 28, 2013, was still present at the time the warrant was executed on February 4, 2013, just seven days later. Therefore, the information in the affidavit was not stale, the search warrant in this matter was lawfully issued, and there is no basis to suppress evidence seized pursuant to the warrant.

### B.     The other Search Warrants at Issue

This Court has reviewed the other search warrants at issue, i.e., (1) the November 15, 2013 warrant to search the residence described as 2XXX S.

---

[4]     Defendant asserts that there is only "a vague connection made to the 2002 Chevy mini van" in the affidavit. (Doc. No. 30, Def.'s Mem. 2.) This Court finds that the connection between Defendant, the minivan, and the thefts is pretty clear. At a minimum, however, the affidavit is sufficient to create a fair probability that evidence of a crime or contraband would be found by installing a tracking device on the vehicle.

13

Minnesota St., New Ulm, Minnesota, including surrounding curtilage and outbuildings on the premises; (2) the February 7, 2013 warrant to search the main floor and the basement in the residence described as 2XXX S. Minnesota St., New Ulm, Minnesota; (3) the February 14, 2013 warrant to search Storage Unit #3 at B&G Storage in Courtland, Minnesota; (4) the February 14, 2013 warrant to search the identified 2002 Chevy Venture; (5) the February 19, 2013 warrant to search the identified 1999 Buick Sedan; (6) the February 20, 2013 warrant to search Buck Otto White, including his personal property being stored at the Nicollet County Jail, for a T-Mobile cellular phone and an Apple iPhone; and (7) the March 5, 2013 warrant to search the residence described as 2XXX S. Minnesota St., New Ulm, Minnesota, including surrounding curtilage and outbuildings on the premises. This Court concludes these warrants did not violate Defendant's constitutional rights. All of these search warrants were based on sufficient probable cause as stated in the accompanying affidavits by the respective officers and investigators and as determined by the respective state-court judges. All of these warrants properly and sufficiently identified the location of the search and the items to be seized. And, as noted above, Defendant presents no argument at all explaining why probable cause was absent in any of these warrants.

Further, this Court is satisfied that all the warrants here meet the requirements under the Fourth Amendment and the good-faith exception

enunciated in *United States v. Leon*, 468 U.S. 897 (1984).[5] Therefore, because each of the search warrants was lawfully issued and there is no requirement for suppression of evidence seized pursuant to these warrants, this Court recommends that Defendant's motion to suppress evidence be denied.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Amended Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 28), be **DENIED**.

Date: May 13, 2013

                                               *s/ Jeffrey J. Keyes*
                                               JEFFREY J. KEYES
                                               United States Magistrate Judge

---

[5] "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). Here, this Court concludes that the good-faith exception would apply in each instance. There is no evidence to suggest that the officers' reliance on the warrants was not in good faith, nor is there evidence that the officers' reliance was not reasonable.

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 22, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **<u>seven days</u>** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.